# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 20-1669V
### UNPUBLISHED

| | |
|---|---|
| ANNA-LIS SEEVERS,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: November 4, 2025 |

*Scott William Rooney, Nemes, Rooney P.C.,* Farmington Hills, MI for Petitioner

*Mark Kim Hellie,* U.S. Department of Justice, Washington, DC, for Respondent.

### **FINDINGS OF FACT AND ORDER TO SHOW CAUSE**[1]

On November 24, 2020, Anna-Lis Seevers filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered an anaphylactic reaction and developed sarcoidosis as a result of an influenza vaccine administered on November 29, 2017. Petition at 3. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find Petitioner has not established that she suffered the residual effects of her injury for more than six months. Because this likely precludes any form of claim, the matter is appropriately dismissed in its entirety, unless Petitioner can show cause why this claim is tenable.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I. **Relevant Procedural History**

Petitioner alleges that suffered an anaphylactic reaction to a flu vaccine. Petition at 1, 3. From this, she maintains she developed sarcoidosis (allowing that it "may be an exacerbation of a previous condition"). *Id.* at 3. Respondent filed a Rule 4(c) Report defending this case on February 24, 2023. ("Report"), ECF No. 45 at 1, 9-10. Respondent argues that Petitioner has not established a Table injury of anaphylaxis because the onset of her condition did not occur within four hours of vaccination. *Id*. at 9. Petitioner briefed the issue of onset on December 11, 2023. Petitioner's Brief Regarding Onset ("Pet. Br."), ECF No. 50. Respondent filed a response on May 2, 2024. Respondent's Onset Brief ("Resp."), ECF No. 51-1.[3] Petitioner filed a reply on October 30, 2023. The matter is ripe for resolution.

II. **Petitioner's Medical Records**

A. **Pre-Vaccination Medical Records**

Petitioner's medical history is significant for pleurisy, contact dermatitis, polyarthralgia, fibromyalgia, complex regional pain syndrome/reflex sympathy dystrophy, and reactive airway disease. Ex. 14 at 498, 613-14, 618; Ex. 4 at 169. She was involved in a motor vehicle accident when she was 21 resulting in a traumatic brain injury requiring significant physical, occupational, and speech therapy. Ex. 14 at 556. She also has allergies to codeine, latex, bee stings, and sulfa-containing medications. *Id.* at 514-15, 668.

Prior to her vaccination, Petitioner was seen for a recurring facial rash on April 5, 2016, that was worsening over the past two years. Ex. 14 at 596-99. She sought treatment for the rash again on October 17, 2016 and had a biopsy of a pruritic rash on September 21, 2017. Ex. 14 at 408, 501. Additionally, Petitioner was seen for emergency care related to a bee sting on August 31, 2016 and shortness of breath on September 14, 2016. Ex. 14 at 514-18, 520-21.

On October 9, 2017, Petitioner underwent gastric sleeve surgery. Ex. 12 at 1073-74. She was then seen for dehydration, nausea, and vomiting on November 17, 2017. Ex. 3 at 51. Petitioner subsequently filled a medroxyprogesterone prescription on November 28, 2017. Ex. 10 at 5.

---

[3] Respondent concurrently filed an unopposed Motion for Leave to File out of Time (ECF No. 51), which was granted.

### B.  Vaccination and Subsequent Medical Records

On November 29, 2017, Petitioner received a flu vaccine in her left shoulder.[4] Ex. 2 at 1-2; Ex. 9 at 6. Two days later (December 1, 2017), she sought emergency care for worsening hives, itching, and lip swelling. Ex. 3 at 1. She reported that she received a flu vaccine two days prior and started to get itchy. *Id.* Further, she stated that "the next day she started estrogen supplementation and became even more itchy." An examination showed papular erythema rash on her skin, but no tongue or lip swelling. *Id.* at 2-3. She was given intravenous ("IV") steroids, but no epinephrine, and diagnosed with an allergic reaction and instructed to take Benadryl. *Id.* at 3.

Two days later, on December 3, 2017, Petitioner returned for emergency care. She reported increased swelling in her lips, hives on her face and neck, increased shortness of breath, difficulty breathing, and an itchy throat. Ex. 3 at 6. She exhibited mild swelling of her uvula and upper lip, hives on her face, and a mild rash. *Id.* at 6-7. Petitioner was diagnosed with an allergic reaction, given an epinephrine injection, IV Benadryl, IV fluids, IV steroids, and Pepcid. *Id.* at 7.

Petitioner sought additional emergency care on December 4, for the third time due to a "reaction which she states occurred after [] getting a flu shot 5 days ago." Ex. 3 at 57. She reported hive-like rash with some target type lesions on her face, back, arms, and chest, but no respiratory distress. *Id.* at 57-58. The treating doctor noted her condition "may be erythema multiforme allergic reaction to the flu shot or her starting progesterone." *Id.* at 57.

On December 5, 2017, Petitioner followed up with her primary care provider. Ex. 14 at 398. She reported "an anaphylactic reaction" following the influenza vaccine that consisted of "hives shortly thereafter" followed by itching the next day. *Id.* at 399. Her rash was slowly improving, and her swelling had resolved, but she continued to have pruritus (severe itching of the skin) and shortness of breath. *Id.* at 398.

Petitioner returned to the emergency room on December 6, 2017, for treatment of a rash on her face, back, abdomen, legs, and arms. Ex. 12 at 243. She reported that she had a "flu shot" on November 29 and started new progesterone-continuing medication on November 30. Ex. 12 at 242. "She woke up on the morning of December 1 with a severe rash…." *Id.* A CT scan of her neck showed enlarged lymph nodes, and her oxygen levels

---

[4] The vaccination records appear to have been made several days after Petitioner's vaccination. *See* Ex. 9 at 5, 7 (noting the "Appt. Date" and "Administered" date as December 5, 2017). *But see* Ex. 9 at 7 (noting petitioner's flu vaccination "to be administered on or around 11/29/2017."); *see also* Ex. 2 at 1 (petitioner's official vaccination record also reflects her flu vaccination on November 29, 2017).

3

were 77%. *Id.* She was admitted to the hospital with "evident allergic reaction symptoms" and discharged on December 7, 2017, after a lymph node biopsy. Ex. 3 at 38-39.

On December 13, 2017, Petitioner had a follow-up with an allergist. Ex. 4 at 2696-97, 2702-03. She reported a rash developed within 1.5 hours of vaccination but went away after she had Benadryl. *Id.* at 2696. The next day she "felt ok", but experienced swelling in her lips, race, and a rash that Friday. *Id.* The symptoms resolved following more Benadryl. *Id.* at 2696-97. Additionally, Petitioner stated that she took a progestin pill on November 29 and 30, 2017. *Id.* at 2696-97. The allergist noted that "[t]his is not typical of allergic reactions to an exogenous exposure (like a medication)…" and that the flu vaccine "can cause anaphylaxis but this is typically within 2 hours of injection." *Id.* at 2702. Further, the vaccine could have caused the rash, but "would not explain the entire course". *Id.* The allergist ultimately stated "I am unsure what caused the symptoms over the last two weeks, but I doubt there is an exogenous trigger. I suspect that it is related to the lymphadenopathy that was found on chest CT." *Id.* Additionally, Petitioner's two-year history of amenorrhea, itching, and shortness of breath suggested "the process in her chest has been there for some time." *Id.* at 2702-03.

A diagnostic bronchoscopy and biopsy was preformed on December 19, 2017. Ex. 4 at 2838-39, 2971-76. Two lymph nodes showed possible signs of granulomatous diseases such as sarcoidosis or histoplasmosis. *Id.* Almost three months later, Petitioner had a repeat chest CT scan on March 8, 2018, which showed stable appearance of lymphadenopathy consistent with sarcoidosis. Ex. 4 at 3355.

Petitioner sought treatment for shortness of breath and hives in March and April of 2018. Ex. 14 at 293, 314. On May 8, 2018, Petitioner saw a pulmonologist for what he deemed an "absolutely fascinating presentation of sarcoidosis." Ex. 4 at 3451-52. Her history was described as including gastric sleeve and "a flu shot this winter after which she had what was thought to be an anaphylactic reaction…." *Id.* at 3452. He recommended a 10mg dose of prednisone for six months. *Id.* at 3459.

Petitioner followed up with the pulmonologist in May and June 2018. He recommended she decrease steroid dosage, discontinue antihistamines, and a skin biopsy. Ex. 14 at 3616, 2745, 3779. A skin biopsy on June 7, 2018, showed mild perivascular dermatitis with eosinophils. Ex. 14 at 3774, 3779. The results were "most consistent with a dermal hypersensitivity reaction such as urticaria, an urticarial drug eruption, or arthropod bite eruption." *Id.* at 3774.

Petitioner sought a second opinion from a different pulmonologist. Ex. 5 at 29-33. Petitioner reported that "[f]ollowing flu shot in late November she developed anaphylactic

reaction with rash, urticaria, orbital edema, airway edema and throat tightening." *Id.* at 30. The treater agreed with the diagnosis of sarcoidosis. She noted that the photos of Petitioner's lesions were consistent with plaque sarcoidosis, and agreed with prior treatment recommendations. *Id.* at 34. It was also recommended that "[n]o flu shots given prior allergic reaction." *Id.* at 46.

After a follow-up with an allergist in August of 2018, Petitioner was prescribed cyclosporin in addition to Plaquenil and prednisone. Ex. 4 at 4123. She also ordered monthly injections of Xolair. Ex. 4 at 4123, Ex. 11 at 201.

In December of 2018, Petitioner reported numbness and tingling in her hands and feet. Ex. 4 at 5051-53, 5081-82. She saw a neurologist who noted small fiber neuropathy is a known complication of sarcoidosis. Ex. 4 at 5148-49.

Petitioner's last pulmonologist treatment was in February 2019. Ex. 4 at 5333-38. However, she received intermittent Xolair injections for chronic urticaria until at least August of 2021. Ex. 11 at 2. Recent medical records from her primary care physician note Petitioner has chronic muscle soreness that may be due to fibromyalgia, but no reference to ongoing sarcoidosis, urticaria, hives, or allergic reactions.

### III.   Affidavit Evidence

Petitioner submitted two affidavits in support of her claim. Ex. 1, 15. She states "within hours after receiving the vaccination, [she] developed hives, a rash, as well as a tingling in [her] lower lip. Ex. 1 at 3. In Petitioner's supplemental affidavit, she states that she "started not feeling well within about 15 – 30 minutes of receiving the [flu] shot. Ex. 15 at 1.

### IV.   Legal Standard

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which

---

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, anaphylaxis following a flu vaccine is compensable if it manifests within four or less hours of vaccination.  hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XVI)(A). The Qualifications and Aids to Interpretation also specify that:

> Anaphylaxis is an acute, severe, and potentially lethal systemic reaction that occurs as a single discrete event with simultaneous involvement of two or more organ systems. Most cases resolve without sequela. Signs and symptoms begin minutes to a few hours after exposure. Death, if it occurs, usually results from airway obstruction caused by laryngeal edema or bronchospasm and may be associated with cardiovascular collapse. Other significant clinical signs and symptoms may include the following: Cyanosis, hypotension, bradycardia, tachycardia, arrhythmia, edema of the pharynx and/or trachea and/or larynx with stridor and dyspnea. There are no specific pathological findings to confirm a diagnosis of anaphylaxis.

42 C.F.R. § 100.3(c)(1).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical

professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

## Analysis

### I. Onset of Petitioner's Anaphylaxis Likely Occurred within Four Hours of Vaccination

The onset of anaphylaxis following a flu vaccine must be four hours of less to satisfy the requirements for a Table claim. 42 C.F.R. § 100.3(a)(XVI)(A). Cases where onset is outside this narrow window are routinely dismissed. *See, e.g., Waterman v. Sec'y of Health & Human Servs.*, No. 13–960V, 2015 WL 4481244, at *4–5 (Fed. Cl. Spec. Mstr. June 30, 2015) (twelve hours between vaccination and reaction resulting in death too long to establish Table claim of anaphylactic injury), *mot. for rev. den'd*, 123 Fed. Cl. 564 (2015); *La Londe v. Sec'y of Health & Human Servs.*, No. 06–435V, 2012 WL 5351164, at *10 (Fed. Cl. Spec. Mstr. Sept. 28, 2012) (onset of anaphylactic reaction five hours after receipt of DTaP vaccine too long outside of defined period to support Table claim), *mot. for review den'd*, 110 Fed. Cl. 184 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014).

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported signs of anaphylaxis including worsening hives, itching, and lip swelling, on December 1, 2017, two days after her flu vaccination. Ex. 3 at 1. Further, the record notes that Petitioner received a flu vaccine and stated to get itchy. Ex. 3 at 1. She also described her reaction on December 5, 2017, with one record noting Petitioner had "an anaphylactic reaction" following a flu vaccine consisting of "hives shortly thereafter" followed by itching the next day. Ex. 14 at 399; *see also* Ex. 3 at 38 (record from December 7, 2017 stating Petitioner's symptoms "started last Wednesday after she received the flu vaccine" and that "soon after having the vaccine she broke out in a rash that included multiple blisters"). Petitioner's declarations corroborate the onset timeline, stating that her pain started when she received the vaccination. Ex. 1 at 3, Ex. 15 at 1.

Respondent argues that Petitioner did not report breathing issues until four days post-vaccination, and her temporal associates with the rash to her flu vaccine "is confounded by her starting a new medication the same day that she was vaccinated." Resp. at 9. While the record does contain complications including the starting of a new medication, when viewed in its entirety there is ample evidence to find proper onset near in time to the vaccination. Further, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner linked the onset of her symptoms to the vaccination, and she more often than not maintained it began in a timeframe consistent with this Table requirement.

**II.      Six Month Severity Requirement is Not Presently Met**

All claims, including table, claims must satisfy the statutory requirement set forth in Section 11(D) of the Vaccine Act, which requires that a petitioner suffer the residual effects or complications of her injury for more than six months after vaccine administration (or, alternatively, die or require inpatient hospitalization and surgical intervention as a result of her vaccine injury, neither of which (thankfully) occurred in the present case). The Vaccine Act obligates a petitioner to show, by preponderant evidence, that her alleged condition is the residual effects or complications of her vaccine-related injury. Unrelated subsequent harm, even if parallel to the initial injury, is not enough. *See, e.g.*, *Pearson v. Sec'y of Health & Hum. Servs.*, No. 17-489V, 2019 WL 1150044, at *11 n.13 (Fed. Cl. Feb. 7, 2019) (finding symptoms could not satisfy the six-month severity requirement because petitioner failed to persuasively link the alleged residual effects to her alleged initial anaphylaxis-type reaction); *Price v. Sec'y of Health & Human Servs.*, No. 11-442V, 2015 WL 7423070, at *7 (Fed. Cl. Spec. Mstr. Oct. 29, 2015) (awarding compensation to petitioner who experienced Table anaphylaxis that caused ongoing seizures for more than six months). The single anaphylactic event must thus be demonstrated to have resulted in *some* subsequent symptoms or complications that persisted or unfolded for at *least* six months thereafter. For example, a petitioner who faints from the anaphylaxis and then hurts himself, requiring six or more months of treatment, would be able to show severity.

Petitioner asserts that she has meets the requirements of a Table claim, and that the anaphylaxis reaction caused her to suffer a reactive airway condition and develop sarcoidosis. Petition at 3, 4. Further, Petitioner alleges suffered these injures for more than six months. *Id.*

In this case, to meet the six-month severity requirement Petitioner would need to preponderantly show that her sarcoidosis and/or her reactive airway condition were

casually linked to her initial anaphylaxis on November 29, 2017. However, the record reveals that two of Petitioner's treating physicians did *not* make this connection.

For example, when Petitioner sought care for a "reaction with…occurred after [] getting a flu shot", the treating physician noted her condition her condition "may be erythema multiforme allergic reaction to the flu shot or her starting progesterone." Ex. 3 at 57. Notably, she exhibited a hive-like rash, but no respiratory distress at that time. *Id.*

On December 13, 2017, an allergist questioned whether the flu vaccine could have caused Petitioner's injury, noting her reaction was "not typical of an allergic reactions to an exogenous exposure (like a medication)…". Ex. 4 at 2702. Further, the vaccine could have caused the rash, but "would not explain the entire course" of Petitioner's injury. *Id.* The allergist ultimately stated that "I am unsure what caused the symptoms over the last two weeks, but I doubt there is an exogenous trigger. I suspect that it is related to the lymphadenopathy that was found on chest CT." *Id.*

While preponderant evidence does suggest Petitioner may have had an initial reaction that could credibly be linked to her receipt of the flu vaccine, that reaction was short-lived. Further, Petitioner has not persuasively linked the reactive airway condition and sarcoidosis to whatever initial anaphylaxis-type reaction she may have had, so these symptoms cannot satisfy the six-month severity requirement.

## Conclusion

**Petitioner shall show cause why her claim should not be dismissed for failure to meet the six-month severity requirement. She shall file any additional evidence needed by no later than December 3, 2025.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master